J. C. FISHER, Appellee, v. CEDAR RAPIDS & MARION CITY RAILWAY COMPANY, Appellant.

MUNICIPAL CORPORATIONS: Ordinance—Construction—Law of
1 Road. Ordinance construed, and held not to prohibit a traveler from crossing streets at places other than at intersections of streets.

NEGLIGENCE: Acts Constituting Negligence—Crossing Streets at
2 Non-Intersections. ˊCrossing streets at non-intersecting street points is not, of itself, negligence.

MUNICIPAL CORPORATIONS: Ordinance—Construction—Law of
3 Road—Negligence. One compelled to drive on the left-hand side of a street, owing to the fact that the right-hand side thereof has been left in an untraveled condition, does not violate an ordinance commanding travel on the right-hand side.

MUNICIPAL CORPORATIONS: Ordinance—Construction—Law of
4 Road—Negligence. A traveler, while in the act of crossing a street in order to reach the right-hand side thereof, and while in or near the middle of the street, is not within the zone of operation of an ordinance commanding travel to be "as near as possible to the right-hand curb."

NEGLIGENCE: Acts Constituting Negligence—Violation of Ordi-
5, 9 nance. Negligence cannot be predicated on the failure to do the impossible, though commanded by ordinance.

PRINCIPLE APPLIED: An ordinance commanded the traveler to travel upon the right-hand side of the streets and to turn to the *left* in attempting to cross a street. A traveler was proceeding to the west and upon the *left-hand* side of the street, because the right or north side of the street was not in a condition to be traveled. Upon reaching a part of the street where he could travel upon the right or north side, he turned to the *right*, in order to reach the right-hand or north side of the street. In so doing, he was hit by a street car and injured. *Held*, he was not guilty of negligence *per se* in turning to the *right*, said ordinance to the contrary notwithstanding.

**NEGLIGENCE: Contributory Negligence—When Jury Question—**
6 **Evidence.** Unless the law positively commands one to do or to refrain from doing a certain thing, negligence is a question of fact for the jury's solution, whenever, upon any reasonable theory of circumstances, fair-minded men may differ as to the conclusions to be reached. Evidence reviewed, and held insufficient to charge a traveler with contributory negligence *per se* in driving across a street car track ahead of an approaching car.

**NEGLIGENCE: Instructions—Failure to Define Negligence—Effect.**
7 Instructions which, as a whole, correctly state the degree of care and foresight which plaintiff must have exercised in order to recover, and what acts of omission would defeat recovery, cure an error in not giving the jury a technical definition of "negligence" and "contributory negligence," no request having been made for more specific instructions.

**TRIAL: Instructions — Form, Requisites and Sufficiency — Correct**
8 **Though Inexpicit—Waiver.** If an instruction is correct as given, though not as explicit as desired, request *must* be made for the more explicit instruction, or waiver will be the penalty. So held where the court failed to define "ordinary care," "negligence" and "contributory negligence," but otherwise correctly stated the degree of care required of the injured party.

**NEGLIGENCE: Acts Constituting Negligence—Violation of Ordi-**
5, 9 nance.

*Appeal from Linn District Court.*—W. N. TREICHLER, Judge.

WEDNESDAY, MAY 10, 1916.

REHEARING DENIED THURSDAY, SEPTEMBER 21, 1916.

ACTION for personal injuries. Verdict and judgment

for the plaintiff in the court below.  Defendant appeals.—
*Affirmed.*

*Barnes, Chamberlain & Randall,* for appellant.

*Gorden & Osmundson* and *B. L. Wick,* for appellee.

GAYNOR, J.—This action is brought to recover damages
resulting from a collision between one of defendant's street
cars and a wagon in which plaintiff was riding.  Plaintiff
claims that he was thrown from the wagon by the impact of
the car and sustained painful injuries.  He also asks to
recover the value of a horse killed in the accident.

The accident out of which this suit arises occurred on
Beaver Avenue in the city of Cedar Rapids, 30 or 40 feet
west of the intersection of Twenty-second Street with Beaver
Avenue.  Beaver Avenue runs east and west.  Defendant's
railway track extends along the center of the street east and
west, crossing Twenty-second and Twenty-third Streets.
Twenty-second and Twenty-third Streets run north and south,
and intersect Beaver Avenue.  The northern terminus of
these streets is at Beaver Avenue.  Beaver Avenue, west from
Twenty-second Street, is paved, and so paved that it can
easily be crossed at the intersection of Twenty-second Street.
Beaver Avenue is not paved east of Twenty-second Street.
All the travel on Beaver Avenue east of Twenty-second Street
is on the south side of the avenue, south of defendant's track.
At Twenty-third Street, there is no provision made for cross-
ing the track from the south.

On the 22d day of December, 1913, at about 5:30 in the
evening, the plaintiff came from the south on Twenty-third
Street to Beaver Avenue, turned then onto Beaver Avenue,
and proceeded westward along the south side of Beaver Ave-
nue over this dirt road, until he reached Twenty-second Street.
There he entered upon the pavement.  Instead, however, of
turning directly across the street, as he might have done on
Twenty-second Street, to the north side of the street, and pro-

ceeding then westwardly along the north side of Beaver Avenue, he traveled diagonally some 30 or 40 feet on the south side of the paved portion of Beaver Avenue, and then attempted to cross the railway track at a point variously estimated at from 30 to 50 feet west of the west side of Twenty-second Street, and was there run down and injured, and his horse killed. The car that struck him was also proceeding toward the west.

He brings this action to recover damages, and alleges that the damages sustained by him were due to the negligence of the defendant, and the negligence which he charges caused the injury is: First, that the defendant ran and was running its car, at the time of the collision, at a high and dangerous rate of speed, without due regard to the safety of the public using the avenue. Second, that it failed to give any warning of the approach of the car by gong or bell, either as it approached Twenty-second Street, over which it had to pass in reaching the point of collision, or before reaching the point of collision. Third, that the defendant's motorman discovered plaintiff, or, in the exercise of ordinary care, should have discovered plaintiff's peril, in time to have avoided the injury, but failed to exercise such care.

The answer of the defendant was: First, a general denial; second, that the plaintiff was guilty of negligence directly contributing to the injury, in that he was, at the time, engaged in crossing the track in a manner and at a place prohibited by the ordinances of the city.

The cause was submitted to the jury on the first two grounds of negligence alleged. The doctrine of last clear chance was not submitted. The jury returned a verdict for the plaintiff, and, judgment being entered thereon, defendant appeals.

The defendant presents four grounds for reversal: First, in overruling defendant's motion for a directed verdict; second, in refusing to submit to the jury instructions asked by the defendant; third, in the giving of instructions to the jury

on its own motion; fourth, in overruling defendant's motion for a new trial. We take up these errors in the order of assignment.

The motion for a directed verdict was predicated mainly on the proposition that the plaintiff was guilty of contributory negligence, in that he was, at the time, in the act of violating an ordinance of the city, both in what he did and in the manner of its doing, and that this contributed to the injury of which he complains, and this, therefore, precludes any right of recovery as against the defendant. The sixth ground of the motion for a directed verdict seems to be broader than the mere allegation of contributory negligence, and may have been intended to cover the whole case; but the argument presented in support of this claim narrows this assignment to the one question. This we conceive to be the main ground of defendant's complaint under this assignment.

The general rule contended for by the defendant in support of this assignment of error will not be questioned. It has been too frequently held by this court that a violation of a statute or a municipal ordinance is *per se* negligence, and that, if injury results to one while engaged in the prohibited act, and the doing of the prohibited act contributes to the injury, no recovery can be had. See *Herries v. City of Waterloo,* 114 Iowa 374, and authorities cited; *Healy v. Johnson,* 127 Iowa 221.

1. MUNICIPAL COR-
PORATIONS: or-
dinance: con-
struction: law
of road.

The question then is: Was the plaintiff, at the time of the collision, or immediately preceding the collision, in the act of violating an ordinance of the city of Cedar Rapids?

The record discloses what plaintiff was doing, as follows: He came down Twenty-third Street from the south. When he reached Beaver Avenue, he turned to the left, and proceeded along the south side of Beaver Avenue to Twenty-second Street. It is not seriously contended that he did not have a right to travel on the south side of Beaver Avenue as far, at least, as Twenty-second Street. The record discloses

that all the travel was on the south side; that, approaching Beaver Avenue from the south on Twenty-third Street, there was no provision made for crossing defendant's railway track; and it is apparent that all persons approaching Beaver Avenue from the south on Twenty-third Street did proceed westwardly on the south side of defendant's tracks as far as Twenty-second Street.    When he reached Twenty-second Street, he proceeded diagonally across the street to the point of collision.    (We herewith submit a sketch showing approximately the point of collision and the streets in question.)

He did not turn and cross at the intersection of Twenty-second Street and Beaver Avenue when he reached the pavement.    This is what the defendant says constituted a violation of the ordinance precluding recovery, under the rule hereinbefore stated.

The sections of the ordinance relied on, so far as related to the matter here in controversy, are as follows:

"Section 367.    6.    The driver of a vehicle shall turn to the right when meeting another vehicle, and shall at all times travel on the right-hand side of the street, as near the curb as possible.

"Section 371.    10.    The driver of any vehicle shall, before stopping, turning or changing the course of said vehicle, first see that there is sufficient space to make such movement in safety, and shall give a visible or audible signal to the crossing officer, or to the drivers of vehicles following,

of his intention to make such movement, by raising the hand or whip and indicating with it the direction in which he wishes to turn.

"Section 374. 13. The driver of a vehicle, in crossing from one side of the street to the other side thereof, shall turn to the left, so as to head in the direction in which traffic is moving.

"Section 402. 41. Street cars shall have the right of way between cross streets over all other vehicles, except as provided in Section 35.

"Section 421. 60. Any person who shall violate any provision of this ordinance shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not to exceed $25, or shall be imprisoned not to exceed 7½ days."

There is nothing in this ordinance, nor is there anything in the general law, which requires a person to cross a public street at an intersection, or at any particular point in the street. Therefore, the fact that the plaintiff did not, on reaching Twenty-second Street from the east, proceed to cross Beaver Avenue at the intersection, does not, in and of itself, involve an act of negligence. It is not negligence *per se* for a person to attempt to cross a street at any convenient point. See *Watson v. Boone Electric Company*, 163 Iowa 316. In this case, the plaintiff was struck by a car operated by an electric railway company and injured. Just prior to the collision, he was driving westward along the north side of the track. At a point somewhere from 25 to 50 feet east of the intersection, he turned to the left, to the south side of the street. He had nearly cleared the track when he was struck. It was the contention of the defendant that the plaintiff was guilty of contributory negligence. This court said:

"Nor do we think that appellant's earnest contention that plaintiff was guilty of contributory negligence as a matter of law can be sustained. Plaintiff was rightfully upon

2. NEGLIGENCE: acts constituting negligence: crossing streets at non-intersections.

the street, and could rightfully cross the railway track at any time or place within the public highway.''

Here we might remark that, in the consideration of cases bearing upon this question, a distinction must be kept in mind between the right to cross and the care required in attempting to cross at a point other than at intersection. In this case, as in the *Watson* case, the plaintiff had a right to cross the street at any time or place within the public highway. He was not bound to cross at the intersection of Twenty-second Street. He was required, in either case, to exercise reasonable care and caution for his own safety while in the act of crossing, but was not required to exercise more care and caution than the average man of ordinary prudence may be expected to exercise in either case.

It must never be lost sight of, in considering the relative rights and duties of a street railway company, occupying the streets for its own purposes, and the rights and duties of a pedestrian or those traveling loosely upon the street, that the railway company holds its right in common with the general traveling public. Each has a right to travel upon the street, but each must exercise his right in due recognition of, and with due regard to, the right of the other. Each is required to be watchful in the exercise of his right, to the end that he may not impose a greater burden or peril upon the other than a fair exercise of his right imposes.

It is further said in the *Watson* case, quoting from page 321:

''Subject, of course, to due regard to the rights and safety of others, a traveler may walk or drive upon any part of the highway and cross the same from side to side, wherever the same is convenient for his purpose.''.

This rule does not impinge upon the right of a city, by proper ordinances, within proper limits, to direct the travel upon its streets. The city is given the control of the public streets within its boundaries; and, within proper limits, and with due regard to the convenience and safety of the traveling

public, may, by ordinance, direct and control the manner of their use.

We reach the conclusion, therefore, that. when the plaintiff reached Twenty-second Street, he was not, as a matter of law, guilty of negligence in not turning immediately to the left at the intersection, and in not passing over the intersection, to the north side of Beaver Avenue.

It is said, however, that the defendant violated Section 367, in that he did not travel on the right-hand side of the street, as near the curb as possible. It must be borne in mind that, before reaching Twenty-second Street from the east, he was forced by conditions of the street, and invited by the general course of travel, to proceed on the left-hand side of Beaver Avenue up to Twenty-second Street.

3. MUNICIPAL CORPORATIONS: ordinance: construction: law of road: negligence.

The ordinance must receive a reasonable construction; and it would be unreasonable to say, and therefore not within the contemplation of the lawmaking body, that one is guilty of a violation of an ordinance who does the things which the very conditions with which he is confronted by the act of the city force him to do, and pursues the only line of travel open to him at the time. The north side of this street was not in a condition for travel east of Twenty-second Street. All the travel was on the south side—the left-hand side as you proceed west. Therefore, it would not be possible for him to travel upon the right-hand side of the street as far as Twenty-second Street. When he reached the paving, he turned to cross to the right-hand side of the street in compliance with the ordinance, and was in the act of passing to the right side of Beaver Avenue at the time of the collision.

4. MUNICIPAL CORPORATIONS: ordinance: construction: law of road: negligence.

Without thus passing over the tracks, it was not possible for him to reach the right-hand side of Beaver Avenue on the paving, and pursue his journey "as near the curb as possible," in conformity with this provision of the ordinance.

Section 374 provides that he shall turn to the left in

attempting to cross a street.   Now it is apparent that, when he reached the paved portion of Beaver Avenue, approaching it, as he had a right to do, from the east on the south side of Beaver Avenue, he could not reach the north side by turning to the left.   He must turn to the right, whether he crossed at the intersection or at any other portion of Beaver Avenue west of Twenty-second Street, in order to reach the north side of the street and to travel upon "the right side of the street" and "as near the curb as possible."   If he attempted to cross at the intersection of Twenty-second and Beaver, he must turn to the right.   If he attempted to cross to the north side at any other point, he must turn to the right. It cannot be said to be a violation of a traffic ordinance to do that which, under the very conditions provided by the city; one is forced to do.   He was required by one provision of the ordinance to travel on the right-hand side of the street and as near the curb as possible.   By the conditions which the city itself had created, he was forced to approach Twenty-second Street and enter upon the paved portion of Beaver Avenue on the left-hand side of the street, and to proceed westward on that street.   Therefore, it became necessary for him, in the very nature of things, to turn to the right in order to reach a point where he could obey the first provision of the ordinance, and he cannot be charged with negligence in so attempting to do. Therefore, it follows that his act in attempting to cross Beaver Avenue at the point where he attempted to cross it was not, in and of itself, a violation of the ordinance and negligence *per se.*

The question then arises:   Was he guilty of contributory negligence in the manner in which he exercised this right? His testimony is that he was driving an ordinary light wagon with one horse attached; that it was about 5:30 in the evening of December 22d; that, as he approached Twenty-second Street, he noticed two ladies standing on the west side

5. NEGLIGENCE: acts constituting negligence: violation of ordinance.

6. NEGLIGENCE: contributory negligence: when jury question: evidence.

of Twenty-second Street at a point where passengers were taken on and alighted from the car; that they were at a point where they would be received from a westbound car; that it occurred to him that they were waiting for a car from the east; that he noticed them before crossing Twenty-second Street; that they were standing on the north side 4 or 5 feet from the track; that when he got about opposite the ladies— that is, after he had passed over Twenty-second Street—he looked back; that he saw the car 350 or 400 feet away; that he could tell that it was moving, but could not tell how fast; that he immediately made a turn across and listened while he was doing so; that he did not hear any gong or bell or anything of the kind; that he was driving on a smooth pavement, and his wagon made but little noise; that there were marks upon the pavement that indicated that wagons had passed over at the point where he attempted to pass; dirt and sand had been scattered by wagons crossing at that point; that there was mud from the wagon wheels; that he followed these across; that he attempted to cross where he crossed before; that this was 40 or 50 feet west of the sidewalk where the ladies were standing; that, when he started to cross, the car was, in his judgment, 350 to 400 feet away; that he thought it would stop for these ladies who seemed to be waiting for the car; that he was urging his horse along and had it under control. He says he was crossing over because he was on the wrong side of the street and was afraid he would meet vehicles and bicycles coming from the town. He estimates that he passed over about 30 or 40 feet after he looked back and saw this car coming, before he was struck. His horse had passed over the track, and the wagon on which he was riding was struck. He estimates that he was driving at the rate of 3 or 4 miles an hour. He says his hearing and his eyesight were good; that the car was plainly visible to him, as well as the marks upon the streets, although the shades of night had fallen. He further said that he had crossed this track many times when the car "was not more than half as

close as it was this time—when it was not more than half a block away"—and he had no trouble. We think, under the record, it was clearly a question for the jury as to whether or not he was exercising reasonable care for his own safety at and prior to the time of the collision.

Our attention is called to *McCormick v. Ottumwa R. & L. Co.*, 146 Iowa 119. The facts in that case differ from those presented here. In that case, the plaintiff drove upon the track without looking back to ascertain whether a car was coming or not, without listening and without taking any precaution whatever to know if there was a car coming.

Unless the law positively enjoins upon one the duty to do, or the omission to do, a particular act, negligence is a question of fact, into the determination of which many circumstances and conditions are interwoven one with the other. This court has uniformly adhered to the doctrine that fact questions are for the jury, and if, upon any reasonable theory of the circumstances shown or admitted, honest and fair men searching for the truth may differ as to the conclusions to be reached upon the facts disclosed, the finding of the jury is conclusive upon this court.

The jury has found against the defendant upon this question. We have no disposition to interfere with their finding. Our reading of the record rather confirms us in the correctness of their finding. In passing, we might say that the evidence in this record is such that the jury might well find that the defendant, as it approached this crossing, was proceeding at a high and dangerous rate of speed; that it gave no warning of the approaching car, either as it approached Twenty-second Street or the point of collision; that the plaintiff, from his viewpoint, acting as a reasonably prudent man, might well have concluded that he had ample time to cross the street in safety before the arrival of the car at the point at which he attempted to make the crossing. He looked and saw the car at a point when, if it were proceeding

with reasonable speed, he would have had ample time to make the crossing before its arrival. He listened for any warning of the car as it approached the intersection of Twenty-second Street. The jury could well have found that no warning of its approach was given; that this, too, tended to lull him into a feeling of security in his effort to cross.

This brings us to a consideration of the second error assigned, in which the defendant charges that the court erred in refusing to give instructions asked by defendant. No good purpose can be served by setting out these instructions. The complaint is made of the refusal of the court to give Instructions 1, 2, 3, 4 and 8 asked by the defendant.

Instruction 1 requests the court to instruct the jury, upon the whole record, to return a verdict for the defendant. For the reason hereinbefore stated, this was rightly refused. All these instructions contain the thought that the plaintiff in what he did, in attempting to cross Beaver Avenue at a point other than the intersection, was violating the city ordinance hereinbefore set out, and was, therefore, guilty of negligence; that, if they found that the plaintiff did these things and the doing contributed to his injuries, he could not recover.

Instruction 2, as requested, would say to the jury that the plaintiff, after passing the intersection of Twenty-second Street and Beaver Avenue, was guilty of a violation of the ordinance in turning to the right to cross from the left-hand side of Beaver Avenue to the right-hand side, and that, in driving across Twenty-second Street onto Beaver Avenue, he was guilty of negligence in that he was then on the wrong side of the street, although he proceeded immediately to right himself by an effort to get on the right side of the street.

Instruction 4 tells the jury that the defendant's act, in turning to cross the street at a point where he did, was unlawful, and, if it contributed to the injury, he could not recover.

Instruction 8 involves the same thought.

These, we think, were all rightly refused, for the reasons hereinbefore stated.

This brings us to a consideration of the third error assigned, which involves the correctness of the instructions actually given by the court on its own motion, or, rather, the fullness of the instructions given in the presentation of the whole case to the jury. On this assignment, the defendant's first contention is that the court failed to give the jury any definition of negligence or contributory negligence. Second, that the court erred in entirely omitting to submit to the jury the defendant's theory of the case, and in failing to instruct the jury as to the proper application to be made of the ordinance introduced in evidence.

7. NEGLIGENCE: instructions: failure to define negligence: effect.

Upon these propositions, we have to say that the court did not give the stereotyped definition of negligence. The court, however, in its eighth instruction, said:

"A person either walking or driving a vehicle about to go upon or across a street car track, is bound to use care and to exercise his senses to ascertain that there is no car approaching which in the exercise of ordinary care would be likely to come in contact with him while attempting to cross the same."

And it supplemented this in the ninth instruction by saying that he could not depend upon nice calculations as to his safety and place himself in apparent danger:

"But a mere error of judgment on his part, if he was exercising reasonable care for his safety, does not necessarily establish negligence on his part. But if the plaintiff, when about to cross the car tracks, failed to look and use his senses in ascertaining whether he could safely cross before the approaching car, could, under ordinary circumstances, reach the place of crossing, then the plaintiff would be guilty of contributory negligence, and your verdict should be for the defendant."

And in a further instruction it told the jury that the plaintiff must establish by a preponderance of the evidence that he was acting as an ordinarily prudent and careful person should act in attempting to cross the car tracks in the

manner in which he did, before the jury would be warranted in finding for the plaintiff.

These instructions are not drawn with technical nicety, but they convey to the jury the thought that the burden was on the plaintiff to show, before he could recover, that he was acting as an ordinarily prudent and careful person would act, in attempting to cross this track; that this involved the use of his senses—a duty to look and listen—to ascertain whether he could cross in safety before attempting to cross; and the jury was told that he could not recover if he failed to establish this, or if it appeared that, at the time of the injury, he was not exercising ordinary care for his own safety. The court did not, in any specific instruction, define what constitutes ordinary care; it did not, in any specific instruction, define what in law constitutes negligence; but it did tell the jury that he could not recover if he was not exercising that care for his own safety which an ordinarily prudent and careful person would exercise under like circumstances, and it did tell the jury that he was guilty of contributory negligence if he did not exercise such care.

Taking the instructions together, we think that the law was fairly presented to the jury, and, assuming them to have ordinary intelligence, and a fair understanding of the language in which the trial was had, gave them

8. TRIAL: instructions: form, requisites and sufficiency: correct though inexplicit: waiver.

sufficient light as to what the law is that governs the rights of parties touching this matter. Negligence is the doing of an act which a reasonably prudent man would not do under like circumstances, and in relationship to the same matter, or the omission to do some act which a reasonably prudent man would not omit to do under like circumstances, and in relationship to the same matter. Ordinary care is that care which reasonably prudent and careful persons usually and ordinarily exercise under like circumstances and conditions. If the defendant had desired fuller instructions upon this question, or had desired that the court furnish the jury

the stereotyped definition of negligence and of ordinary care, it was its duty to request that such instructions be given. This the defendant did not do, although it seems to have discovered this point before the instructions were submitted.

It is the duty of counsel to assist the court, to the end that a fair presentation of the case may be made to the jury whose duty it is to determine ultimately the rights of the parties. A specific request for more definite instructions as to what constitutes negligence and ordinary care, if asked for, would undoubtedly have been given, and, assuming even that the instructions were not as full as they might have been made upon this point, we are not now disposed to reverse the case upon that ground, for the reason that the complaining party failed to make any request to submit any fuller instructions to the court for the guidance of the jury than were given. But, however that may be, we are satisfied that the instructions, as given, though not drawn with technical nicety, were full enough to enable the jury to know what the law is, and what their duty was in the premises, so far as this controversy is concerned.

It is contended that the court erred in giving the fourth and fifth instructions. It must be borne in mind that the court was not, in these instructions, stating abstract propositions of law so full and comprehensive as to cover every conceivable condition or relationship that might arise touching the use of the streets. The instructions were given with reference to the particular matter then before the jury, and were intended to guide them in the particular matter submitted to them. Instructions 4 and 5 read as follows:

"No. 4. You are instructed that drivers of teams or vehicles of any kind have the right to use any part of the street in passing along the same, but street cars shall have the right of way between crossings over all other vehicles.

"No. 5. The law provides that the driver of a vehicle shall turn to the right when meeting another vehicle, and shall at all times drive on the right-hand side of the street,

as near the curb as possible; and in crossing from one side of the street to the other side, shall turn to the left so as to head to the right, in the direction in which traffic is moving.''

Instruction 5 is simply a restatement of the provisions of the ordinance. It might as well have been omitted as given. It serves no useful purpose in the case, under the facts disclosed in this record, but in no way can it be considered prejudicial to the defendant. It simply recites the provision of the ordinance which was in evidence and put there by the defendant. It recites it without comment, and without explanation, and, if prejudicial, was prejudicial to the plaintiff. The complaint is that the court failed to tell the jury that a violation of the ordinance referred to in Paragraph 5 of the instructions would constitute negligence.

As we have said before, the ordinance, as applied to the condition in which plaintiff was found, did not involve the plaintiff in negligence, and, therefore, it would have been wrong for the court to do that which the defendant now complains the court did not do. It is a matter of speculation why the court injected that into the instructions at all.

9. NEGLIGENCE: acts constituting negligence: violation of ordinance.

The court should have told the jury that the plaintiff could not have crossed the street by turning to the left, at the point where he then was; that it was utterly impossible for the plaintiff, at that point, to have followed the technical direction given in this ordinance. If the plaintiff had been beaten in this controversy before the jury, it would occur to the mind that he would have had ground for complaining of this fifth instruction. The fourth instruction, as applied to the facts in this case, was correct, as the authorities heretofore cited show.

The last ground of complaint is the overruling of defendant's motion for a new trial. This motion raised the questions hereinbefore discussed, and what we have said before presents the full defense to the action of the court in overruling the motion.

We find no reversible error in the record. As supporting the conclusions here reached, see *McCormick v. Ottumwa R. & L. Co.,* 146 Iowa 119; *Dow v. Des Moines City R. Co.,* 148 Iowa 429; *Long v. Ottumwa R. & L. Co.,* 162 Iowa 11; *Watson v. Boone Electric Co.,* 163 Iowa 316; *Middleton v. City of Cedar Falls,* 173 Iowa 619.

On the whole record, the cause is—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.