SADIE STURGEON, Appellant, v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY, Appellee.

RAILROADS:   Liabilities Arising from Operation—Accidents at
1   Crossings—Contributory Negligence. A driver of an automobile, having stopped 115 feet from the point of collision, and having driven across the track at 8 or 10 miles an hour, without stopping or paying any further attention to approaching trains or engines, held *per se* guilty of contributory negligence, in failing to pay attention and to exercise care and to have his car under control.

APPEAL AND ERROR:   Harmless Error—Evidence Elsewhere Re-
2   ceived. Exclusion of evidence of a driver of an automobile as

to whether it would have been possible for him to stop after his attention was called to the engine *held* harmless to plaintiff, where he had otherwise testified, in effect, that he could not stop.

TRIAL:   Evidence—Repetition.   Evidence objected to *held* repetition, and objection properly sustained on that ground.

3

TRIAL:   Evidence—Cross-Examination—Explanation by Witness. Where a witness, when asked a question on cross-examination, desired to explain something, and was directed by the trial court to answer the question and then explain, and the answer itself was an explanation, and he was re-examined after this ruling, and was not asked by his counsel as to what explanation he desired to make, there was no error.

4

*Appeal from Grinnell Superior Court.*—J. H. P. ROBINSON, Judge.

OCTOBER 25, 1919.

ACTION at law to recover damages for injury to plaintiff's automobile at a street crossing. At the close of all the evidence, the trial court directed a verdict for the defendant. The plaintiff appeals.—*Affirmed.*

*J. H. Patton,* for appellant.

*Burrell & Devitt,* for appellee.

PRESTON, J.—1. Plaintiff alleges that her automobile, which was being driven by her husband, was struck by one of defendant's engines on a crossing in the city of Grinnell about November 11, 1916; that defendant was negligent in operating its said engine at a dangerous rate of speed, and in excess of eight miles per hour, in violation of an ordinance of the city; in not having the bell continuously rung; in having no gates; in signaling plaintiff's husband to cross; in not giving any warning signal, by bell or whistle; in failing to have the engine under control; in failing to stop the engine within a reasonable time and distance after it struck the automobile. The negligence is denied, and it

is claimed by defendant that plaintiff was guilty of contributory negligence.

Without discussing the alleged negligence of defendant, or the evidence in relation thereto, it may be conceded, for the purposes of the case, that there was sufficient evidence to go to the jury as to some of the grounds alleged. Some complaint is made as to the rulings of the trial court on evidence; but the principal and decisive point in the case is whether the driver, plaintiff's husband and agent, was guilty of contributory negligence. We think the trial court properly directed a verdict on this ground. Since the ruling was based on the sufficiency of the evidence to take the case to the jury, it will be necessary to refer to the evidence somewhat in detail, but we shall do so as briefly as may be. For convenience and brevity, we may refer to plaintiff's husband, the driver, as plaintiff.

The collision occurred on Hamilton Avenue, which runs east and west. It is level, and 100 feet wide. It is paved, the paving being 31 feet 7 inches in width. It is 32 feet between the north curb of the paving and the sidewalk to the north. The sidewalk is 4 feet wide. The south end of the depot platform is about 10 feet north of the north edge of the sidewalk, and the south end of the depot is 27 feet north of the south end of the platform. There are 3 tracks west of the depot, running north and south, and 2 east of the depot; and in addition to this, the plat shows still another track, still further east. Each track is 4 feet 8½ inches in width. It is about 21 feet between the extreme west track, where plaintiff was injured, and the next track west of the depot. Plaintiff says he heard a bell, and stopped east of the second track east of the depot. This was 115 feet east of the track where he was struck. There was a coach standing on the first track west of the depot, the south end of which was about even with the south end of the platform, or a little further south. There were no gates

at the crossing, and there was no flagman at the crossing, which fact was known to plaintiff. Plaintiff was familiar with the crossing. Plaintiff was driving west, and the engine, without cars, was going south. The accident happened on November 11, 1916, at 4:30 o'clock in the afternoon. Mr. Sturgeon and a man named Buswell were returning to Grinnell from the fair grounds south of town. It was a cold, misty day, according to the testimony of some of the witnesses; but they say that one could see all right. All the curtains were on the automobile, but there was isinglass in the curtains. As plaintiff approached the intersection, he says he observed that his view to the north was obstructed by the depot and the coach, when he was 200 feet east of the track on which the coach was located. He knew there were a number of tracks there, but says he cannot say how many. He knew it was in the yards where they switch trains back and forth, and that there were various classes of trains moving across that street on the tracks. He had for two years crossed over the crossing repeatedly. As he approached, he saw 3 or 4 men working on the fifth track from the west, nailing down some boards on the crossing. When he got near the tracks and near the men, he stopped, because, as he says, the men were working on the crossing. He supposed they were section men. When he stopped, he heard a bell ringing on an engine, and knew that there was an engine in the yard. When he stopped east of the track where the men were working, he said to Buswell that he guessed that engine was on the Montezuma train, due about 4:40 P. M., and was pulling up to the depot, and consequently paid no further attention to that engine, because he thought it was going north, until Mr. Buswell called his attention to the engine that struck him as they crossed onto the track. The men were nailing the planks at the north end, down on their knees. One of the section men says that he got up, and motioned to Sturgeon

to go south of where they were nailing, because they were extending the crossing, renewing the planks, and on the north side the plank was up; that plaintiff was driving a little bit to the north, when he motioned plaintiff to drive across the track to the south; and that plaintiff did drive over that crossing where. witness had indicated; that this was the only signal he gave. But plaintiff testifies that he took this signal to be a clear signal, and for him to cross; that he started up at 8 or 10 miles an hour; and that his car would go 30 or 40 feet, at the rate he was going, before he could stop; that, after he started at 8 or 10 miles an hour, he made no effort to slow down or stop, until Buswell shouted, "Here's an engine;" and that then he put his foot on the accelerator, for the purpose of beating the engine across; and that the car then shot ahead. Sturgeon says that, when Buswell shouted that, he looked up, and the engine was nearly against the auto; that, when Buswell spoke, it was just before plaintiff drove onto the track in front of the engine. Sturgeon says he was on the second track from the west, when he learned that there was an engine bearing down on him on the west track. The distance between the two west tracks is 11 feet and 6 inches. Sturgeon states in chief that, after he started across the tracks, he was paying attention to the crossing; but on cross-examination, he says that he paid no attention, and did not look to see whether or not the engine was coming, because he thought it was going the other way, and because of the signal; that the reason he drove across the tracks at 8 or 10 miles an hour, without stopping or paying any attention to approaching trains or engines, was because of this. He says he does not know whether he could see north past the coach after he came up near the track on which it stood, and he didn't try to look. The engine struck the automobile about the middle. The auto was in good condition, was a left-hand drive, and weighed 4,200 pounds.

Plaintiff does not know how fast the engine was going when it struck him. Mr. Buswell gave similar testimony: that he saw the locomotive, and thinks the front wheels of the automobile were then across the second track; that, when he first saw the locomotive, it was about 8 or 10 feet north of the paved crossing in the intersection, and the automobile was about 5 feet east of the track on which the engine was coming; that, when he shouted, the car shot ahead; it was just a jump, and the engine and the automobile collided, and it was all over then. Buswell testifies that he could not tell how far to the north one could see after passing the third track from the west; that he was looking, but could not tell how far it was,—he thinks not as far as the next street; that there was nothing but the freight depot and the coach to obstruct the view to the north; that he couldn't tell at what point it would be possible to see an approaching engine from the north, but, in fact, he did not see it until the engine was about onto the automobile; that, when he discovered the engine, he called Sturgeon's attention to it; and that it was just the instant before the accident. They both say that the automobile was making some noise; that the curtains were on, and they think no bell was ringing: and they testify finally, with more or less positiveness, that it was not ringing. Another witness, a block away, testifies to seeing the engine strike the auto, raise it up, and throw it to the south. A witness for defendant testifies that he went to the scene of the accident immediately afterwards, and made an observation; and he says that, standing on the first track west of the depot in the street, one can see an approaching engine on the west track, with a coach standing at the depot, for a block north. One of the section men testifies that, from where he was working, nailing down the crossing farther east, his view towards the north would be obstructed; that it would not continually be obstructed altogether until one got to

the first track west of the depot, but that it would be, more or less; that you could see from 10 to 15 feet east of the first track, and west, for 100 to 125 feet, if one was looking that way.   Several of the employees of defendant testified in its behalf.   Members of the engine crew state that they were doing switching with the engine which collided with the auto; that the engine was moving between 5 and 7 miles an hour; and that the bell was ringing.   The fireman on the engine was on the east side of the locomotive, and says he did not see the automobile until he got practically onto it, though he was looking for obstructions on the crossing; that he was looking out and ahead; and that he did not see the auto until it came from behind the coach, and it was then 20 feet in front of the engine, and in motion.   The engineer says that, when he was about to the sidewalk line with the cab, the fireman shouted, "Look out;" and that, at that time, he (the engineer) felt the impact. The engineer and the conductor say that there were no other engines in the yard north of Hamilton Avenue at the time.   Defendant's witnesses gave further testimony that differs somewhat, at some points, from the testimony of plaintiff's witnesses; but we shall not set it out any further.

It is thought by appellant that, plaintiff having stopped 115 feet east of the track where he was struck, it was for the jury to say whether, in the exercise of ordinary care, he was to stop, look, and listen, or to look and listen without stopping, at some other point.   Under the circumstances of this case, which will not be repeated, we think plaintiff was required to pay some attention, and to exercise some care, and to have his car under control in traveling the 115 feet from where he stopped, and where the signal was given by the section man.   This he appears not to have done.   He says he did not.   We would suppose that one traveling 8 or 10 miles an hour could stop

1. RAILROADS: liabilities arising from operation: accidents at crossings: contributory negligence.

a car in less than 30 or 40 feet. But plaintiff's evidence as to this seems not to be disputed. If this testimony is true, then it shows that plaintiff did not have his car under control, or that he was going at a higher rate of speed. Taking the whole record, and the testimony of the different witnesses, with the plat introduced in evidence, we are satisfied that, had plaintiff been exercising proper care, he could have seen up the track, north, in time to have stopped his car before being struck, had he been paying attention, and had he had his car under proper control. Under the record, we think plaintiff was guilty of contributory negligence, as a matter of law. We shall not review the cases, or again state the duty of a person approaching a railroad train with an automobile; but see *Wilson v. Illinois Cent. R. Co.*, 150 Iowa 33; *Duggan v. Chicago, M. & St. P. R. Co.*, 179 Iowa 1072; *Schulte v. Chicago, M. & St. P. R. Co.*, 114 Iowa 89; *Powers v. Iowa Cent. R. Co.*, 157 Iowa 347.

2. Two or three rulings on evidence are complained of. Defendant's objections to the following question were sustained:

"Q. Assuming that your automobile at that time was traveling from 8 to 10 miles an hour, what would you say whether or not it would have been possible to have stopped your automobile after your attention was called to the engine, and before your automobile would strike the track the engine was on?"

2. APPEAL AND ERROR: harmless error: evidence elsewhere received.

It appears that, at the time this ruling was made, there had been no showing that the witness had ever driven an automobile before, or that he had any knowledge of the matter inquired about, or the distance in which a car could have stopped. Immediately after this, the foundation was laid, by the witness' stating his experience. If this was not a question for the jury to determine, we think

it was fully answered, and the evidence we have before set out so shows. He did testify that he couldn't stop, and the distance was given where his attention was first called to the engine, and that he could not stop within 30 or 40 feet. Defendant's objection to the following question was sustained:

3. TRIAL: evidence: repetition.

"Q. And was there anything in the form of a signal by bell or whistle after you started up there, to warn you of an approaching train or engine?"

One of the objections was that it was repetition. It was so. The witness had just testified:

"Q. You may state now whether or not, after you got that signal, there was any signal given by the railroad company's engines on these tracks, at or about the time of the accident by bell or whistle? A. No, sir. Q. Was your attention attracted to this engine that struck your automobile by a bell or whistle rung or sounded by that engine? A. No, sir."

Witness testified in other places on the subject.

Another complaint is that witness Sturgeon, when asked the question on cross-examination as to whether he was paying attention, desired to explain something, and the court directed him to answer the question and then explain. The objection is that he was not permitted to explain. The ruling of the court itself permitted him to explain after he had answered. His answer itself was an explanation, so far as appears from anything in the record. Furthermore, he had already testified that a man always pays attention, going across a railroad track, and that he did at that time. Furthermore, witness was re-examined after this ruling, and was not asked by his counsel as to what explanation he desired to make.

4. TRIAL: evidence: cross-examination: explanation by witness.

The judgment is—*Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.