CHARLES A. UPTON, Appellee, v. WALKER D. HINES, Director General, Appellant.

RAILROADS: Accidents at Crossings—Contributory Negligence. Evidence relative to a collision at a railroad crossing reviewed, and held to present a jury question on the issue of contributory negligence, and to justify an order for a new trial, to correct error in a directed verdict against plaintiff.

*Appeal from Boone District Court.*—E. M. McCall, Judge.

DECEMBER 15, 1921.

REHEARING DENIED MARCH 11, 1922.

ACTION at law, to recover damages to an automobile belonging to plaintiff, which was struck by one of defendant's trains upon a railroad crossing in the town of Ogden. Trial to a jury. At the close of plaintiff's evidence, defendant's motion for a directed verdict was sustained. Thereafter, the trial court sustained plaintiff's motion for a new trial. The appeal is from such order.—*Affirmed.*

*Carr, Carr & Cox,* for appellant.

*Dyer, Jordan & Dyer* and *D. G. Baker,* for appellee.

PRESTON, J.—The appellant states that the only question in the case is whether plaintiff was guilty of contributory negligence, as a matter of law. Perhaps a more accurate statement of the question would be whether the trial court abused its discretion in granting a new trial. Briefly, the negligence alleged is that defendant was exceeding the speed limit, as provided by the ordinances of the town; was operating the train at said place at an excessive and negligent rate of speed; failed to give proper signal and warning of the approach of the train; had failed to equip the crossing with a gong or other signal, to warn persons using the crossing of the approach of trains; had numerous box cars, trains, etc., standing upon the side-tracks, close to the crossing, in such a manner as to obscure the vision of the driver while about to drive over the crossing.

The accident occurred about 9 o'clock A. M., November 6, 1918. Plaintiff's minor son was driving the car. He was driving west, 10 or 12 miles an hour. The train was a passenger train, approaching from the south, and was running about 25 or 30 miles an hour when the driver says he first saw it. East of the main line track, at the point of the collision, is a side-track, leading to an elevator. The distance between the inner rails is 43 feet. The evidence tends to show that the day was

cloudy and foggy, with the wind blowing from the northwest; that the street was muddy. The evidence tends to show that the view of the driver was obstructed by a pile of tile, cars on the sidetrack, and an elevator to the south, the direction from which the train was approaching. The driver testifies that he first saw the train when he was 20 feet east of the main track (in another part of his testimony he says 5 feet), and that he first saw the train about 25 feet south of the crossing, and could not see it sooner because of a pile of tile that was on the south side of the crossing, and a box car on the switch, 10 feet from the south edge of the street. The tile was piled up just south of the street, and was 10 feet long, east and west. The driver testifies that he passed the tile, and looked again for a train, but saw none coming; that he had looked for a train when he was east of the elevator, and it was not there, and not in sight; that he first looked as he approached the crossing, looking to the north and west of the elevator, and then looked south. Immediately after the accident, the engineer said he did not see plaintiff's car. Plaintiff says he could not see the Northwestern tower, which is about 400 feet south of the crossing, because it was foggy, and that he could not see the train on account of the fog, and smoke from a Northwestern engine and caboose which had passed over the interlocking crossing just as he crossed the track by the elevator; that he could not see anything between the crossing he was on and the Northwestern signal tower, because of smoke; that it was "kind of foggy;" that it was rainy and foggy; that the car had curtains with isinglass in them, all the way around. Before the train went by, he could see the Northwestern tower. The driver and the party with him testify that, after passing the tile, they could see south down the track about 200 feet, but could not see farther, because of the smoke and fog. There are some circumstances which indicate that the train was going faster, at a point 200 feet from the point of collision, than it was at the time it was observed by the witnesses. The driver says that, when he looked, the train was not in sight. He knew the time of arrival and departure of trains. He knew that this train was about ten minutes past due, but he thought it had passed. Defendant claims that, from the photographs, the driver of the

auto, regardless of the obstructions, had a clear view of the main track beyond the Northwestern signal tower, all the time he was traveling the 43 feet between the tracks. A bystander testifies that he heard two sharp whistles, and then a crash; that the first he heard of the approach of the train was two sharp blasts of the whistle, and then a crash. The automobile was demolished, but neither the driver nor the other occupant of the car was injured. The crossing was much used. The driver was familiar with it. His senses of hearing and sight were normal. The brakes were in good working order. He thinks he could stop his car within ten feet. The evidence tends to show that no whistle, bell, or signal was given by the men in charge of the train. There were no gates, flagman, or electric gong at the crossing. The automobile, after being struck, was dragged about 150 feet. The driver testifies that, after he saw the train, he did all he could to avoid the accident. The ordinance prohibits a greater speed than ten miles an hour. Without going into further detail, such was the general situation at the time of the accident.

In stating his reasons for granting the new trial, the trial court said, among other things, that the reason for directing the verdict was that he took the view that the physical facts, as disclosed by the evidence, necessarily showed that plaintiff was guilty of contributory negligence; that he later concluded that it was erroneous to assume the facts upon which he acted in directing the verdict; that, in sustaining the motion for new trial, he concluded that it would not be physically impossible for the driver to have looked at the point where he says he did look, and not have seen the train within the scope of his vision.

To sustain his position that plaintiff was guilty of contributory negligence, as a matter of law, appellant cites *Artz v. Chicago, R. I. & P. R. Co.*, 34 Iowa 153; *Bloomfield v. Burlington & W. R. Co.*, 74 Iowa 607; *Williams v. Chicago, M. & St. P. R. Co.*, 139 Iowa 552; *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642; *Powers v. Iowa Cent. R. Co.*, 157 Iowa 347; *Sohl v. Chicago, R. I. & P. R. Co.*, 183 Iowa 616; *Sturgeon v. Minneapolis & St. L. R. Co.*, 187 Iowa 645; *Sackett v. Chicago G. W. R. Co.*, 187 Iowa 994; *Waters v. Chicago, M. & St. P. R. Co.*, 189 Iowa 1097; *Reynolds v. Inter-Urban R. Co.*, 191 Iowa 589;

and another case wherein a rehearing has been granted. The facts in the cases cited are distinguishable from the instant case. We shall not again review the cases. Those cited are to the general effect that a party approaching the crossing paid no attention, or that the conditions were such as that, had the party looked, he could have seen. Some of the cases cited are where the party had an unobstructed view for a long distance.

On the other hand, appellee cites, to sustain its position that it was a question for the jury whether plaintiff's son, the driver, was guilty of contributory negligence, *Joyner v. Interurban R. Co.*, 172 Iowa 727; *Pilgrim v. Brown*, 168 Iowa 177; *Hawkins v. Interurban R. Co.*, 184 Iowa 232; *Arnold v. Douglas & Co.*, 176 Iowa 405; *Wiese v. Chicago G. W. R. Co.*, 182 Iowa 508; *Wescott v. Waterloo, C. F. & N. R. Co.*, 173 Iowa 355, 358; *Fisher v. Cedar Rapids & M. C. R. Co.*, 177 Iowa 406; *Hollgren v. Des Moines City R. Co.*, 174 Iowa 568; *Bettinger v. Loring*, 168 Iowa 103; *Toney v. Interstate Power Co.*, 180 Iowa 1362. See, also, *Griffin v. Chicago, R. I. & P. R. Co.*, 192 Iowa 1170. These cases are more nearly applicable to the instant case, and are more nearly in point than are the cases cited by appellant.

Numerous cases are cited by appellee in regard to the discretion of the trial court in granting a new trial, and that the Supreme Court is more reluctant to interfere, where a new trial is granted, than where it is overruled; putting it another way, that the appellate court will more closely scan a ruling refusing a new trial than one granting it. Among other cases, they cite *Carlisle v. Davenport & M. R. Co.*, 178 Iowa 224; *Mullong v. Mullong*, 178 Iowa 552; *McDonald v. Mutual Life Ins. Co.*, 178 Iowa 863. Numerous other cases might be cited, but the rule is so well settled that it is unnecessary to cite further cases.

One difficulty with these crossing cases is that the evidence is not always exact. Witnesses testify that an auto is going *about* 10 or 12 miles an hour; that the train is going *about* 25 or 30 miles an hour; that, from a point *about* a certain distance, a person could see up the track *about* so far. The driver says he was *about* 20 feet from the train when he first saw it, and was then *about* 20 feet east of the track, etc. These are but estimates. No one pretends that the distances are exact. It is important that

the triers of questions of fact as to the alleged negligence of the defendant and the contributory negligence of the plaintiff should put themselves, as nearly as may be, in the position in which the parties were situated at the time of the accident. It is a matter of some difficulty to do this, in every case. It is not so difficult, after an accident, to go to the place, and, by the use of instruments, or by taking photographs from a definite, fixed, and exact standing position, to say that, under such circumstances, the person approaching a crossing could or should have seen certain things. We shall not restate the circumstances before stated, but some of them are that the driver was in motion; he was in an inclosed car; it was rainy, foggy, and smoky; at the speed at which the train was going, the distance wherein appellant contends it could be seen would be covered in a few seconds; he had his car under control; and, according to his testimony, he was exercising care. It is argued by appellant that, regardless of the other circumstances, it is conclusively shown that plaintiff was guilty of contributory negligence, because he testifies that he first saw the train when he was 20 feet east of the track, and about 20 feet from the train, and that he thinks he could have stopped his car within 10 feet. The trouble with this is that the train was going about three times as fast as the auto. The train would cover that distance in a flash,—a fraction of a second. All the circumstances must be considered. It was a question for the jury whether he exercised the proper degree of care, under the circumstances, to avoid injury.

Under all the circumstances, and without further discussion of the facts or the cases, we are of opinion that the trial court did not abuse its discretion in granting a new trial. The judgment is—*Affirmed.*

WEAVER, STEVENS, and DE GRAFF, JJ., concur.